IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| FLOWERS BAKERIES BRANDS, LLC, f/k/a FLOWERS, INC. | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 1:08-CV-2376-TWT |
| v. | ) ) | |
| INTERSTATE BAKERIES CORPORATION, | ) ) ) ) | |
| Defendant. | ) | |

## DECLARATION OF PHILIP JOHNSON

I, Philip Johnson, state as follows:

## BACKGROUND

1. I am Chief Executive Officer of Leo J. Shapiro and Associates, Inc., a Chicago-based market research and consulting firm that conducts surveys.

2. I have been with this firm since 1971. Over the past 38 years, I have designed and supervised hundreds of surveys measuring consumer behavior, opinion, and beliefs concerning brands and products, employing a wide range of research techniques. I am the same Philip Johnson who designed and conducted research described in the report, *"Flowers Bakeries Brands, Inc. vs. Interstate*

*Bakeries Corporation; A Study of Likelihood of Confusion,"* dated July 30, 2009. Specifically, I conducted two research studies at the request of counsel for defendant Hostess Brands, Inc., formerly Interstate Bakeries Corporation ("IBC"): an "Eveready" style confusion survey ("Eveready Survey") and a confusion study that employed an "array design" ("Array Survey").

3. I have been informed that the plaintiff ("Flowers") has filed a motion to exclude significant portions of my expert report and has submitted a critique of my surveys by Dr. Michael Rappeport. I have been provided with and reviewed the following:

- Plaintiff's Motion to Exclude Survey and Expert Report of Philip Johnson and Supporting Brief;
- Dr. Rappeport's critique of my surveys, dated October 2009, and attached to Flowers' Brief as Exhibit E; and
- Dr. Rappeport's deposition transcript from this matter.

4. This declaration is in response to the plaintiff's motion to exclude and Dr. Rappeport's critique of my surveys in this matter.

**<u>The Eveready Survey</u>**

5. The plaintiff offers three main criticisms of the Eveready Survey that pertain to:

- Asking consumers about a potential relationship, sponsorship or affiliation.

- The wording of the filter question.

- The geographic markets in which the survey was conducted.

6. I discuss each of these in turn below.

*Sponsorship/Affiliation*

7. First, the plaintiff argues that I "failed to test for confusion as to sponsorship or affiliation."[1] However, in addition to the direct question that measured source confusion (Question 1a/b), I also asked participants about any other brand or brands that are made by the same company as Nature's Pride (Question 2a/b). It was my intention and is my belief that this question captures respondents' beliefs about any potential sponsorship or affiliation or co-branding.

8. Further, in my experience, including a separate sponsorship or affiliation question usually does not make a significant contribution in these kinds of cases. For example, in two recent cases in which I conducted surveys,[2] the relationship question made no statistically significant contribution to the total

---

[1] Plaintiff's Brief, pages 5-6.

[2] Experience Hendrix, LLC v. Electric Hendrix, LLC, 2008 WL 3243896 (W.D. Wash. Aug. 7, 2008 ), and Lumber Liquidators, Inc. v. Stone Mountain Carpet Mills, 2009 WL 2013599 (E.D. Va. July 10, 2009).

3

confusion result. In fact, in both cases the contribution made by the relationship question was less than the standard error in the survey.

- In the Hendrix case, the Eveready survey found a total confusion level of 29%, of which only 3% came from the relationship question; and

- In the Lumber Liquidators case, the survey found a total confusion level of 2%, of which 0.5% came from the relationship question.

9. The plaintiff also suggests that there is only one way to conduct an Eveready Survey. This is not true. Each survey must be tailored to the specific objectives, issues, and conditions of the case. I have conducted other likelihood of confusion surveys in which I did not specifically ask about sponsorship or affiliation, including surveys that I have conducted on behalf of the plaintiff in those cases.[3]

10. Finally, I also note that the original Eveready Survey did not include a sponsorship or affiliation question. See Union Carbide Corp. v. Ever-

---

[3] For example, see Grocery Outlet, Inc. v. Albertson's, Inc., No. C 06-02173 JSW, 2008 WL 5245962, (N.D. Cal. Dec. 17, 2008).

4

Ready Inc., 531 F.2d 366 (7th Cir. 1976). The following are the substantive questions asked in the original Eveready Survey:

> "Who do you think puts out the lamp shown here?"
>
> "What makes you think so?"
>
> "Please name any other products put out by the same concern which puts out the lamp shown here."

*The Use and Wording of the Filter Question*

11. The plaintiff contends that the use of a full filter question results in under-reporting and cites Dr. Shari Diamond to support this allegation. First, Dr. Diamond actually promotes the use of filter questions in order to discourage guessing. See Shari Seidman Diamond, "Reference Guide on Survey Research," Reference Manual on Scientific Evidence, Federal Judicial Center, 2000, page 251. Second, Dr. Diamond does not say anything that suggests that she endorses use of the word "believe" as opposed to the word "know." See id.

12. The plaintiff further claims that I selected the word "know" (rather than "believe") in order to suppress any potential likelihood of confusion. This is disparaging and simply not true. I have been criticized in the past for using the word "believe," because some argue that it can encourage guessing. As a consequence, I have used the word "know" (rather than "believe") in the filter question in at least two other recent Eveready surveys (see footnote 2). One of

5

these was on behalf of the plaintiff (<u>Experience Hendrix</u>), and the other was on behalf of the defendant (<u>Lumber Liquidators</u>).

*Geographic Markets*

13. As noted in my original report, the objective of the Eveready Survey was to replicate marketplace conditions.[4] Namely, the Eveready Survey was designed to measure what happens when consumers who live in markets where Nature's Own is sold are first exposed to Nature's Pride bread. Dr. Rappeport even acknowledges the validity and importance of measuring such initial exposure confusion in a survey like this.[5] Because of this objective, it was useful to identify markets where Nature's Own is sold but Nature's Pride is not. There were relatively few markets that fit those conditions. Further, the markets in the Eveready Survey included both older Nature's Own markets (Texas) and newer Nature's Own markets (California). Finally, the plaintiff contends that I selected markets with low awareness of Nature's Own. However, Flowers' own internal market research finds that consumer awareness of Nature's Own is very high. For example, there is nearly universal awareness of Nature's Own (90%) in Texas.[6]

---

[4] <u>See</u> paragraph 5 of my original report.

[5] <u>See</u> Rappeport Deposition Transcript, page 56.

[6] <u>See</u> Marketecture survey conducted on behalf of Flowers, IBC Exhibit 8.

*The Use of an Eveready Survey*

14.  As stated in my original report, I consider the Eveready Survey to be the more probative of the two surveys that I conducted in this case.[7] As Mr. Swann (the attorney who took my deposition in this matter) has noted, the Eveready survey is the "gold standard in cases involving strong marks."[8] In this case, Flowers alleges in its papers that Nature's Own is a strong mark, i.e., is famous,[9] and its own internal market research finds that Nature's Own enjoys high consumer awareness in the markets in which it is sold.[10]

**The Array Survey**

15.  The plaintiff does not criticize the design of the Array Survey, but instead criticizes the analysis of the results. Specifically, the plaintiff contends that anyone who matches up Nature's Pride with Nature's Own should be counted as confused, regardless of how many other brands they erroneously connect. However, because the Array Survey design juxtaposes two or more brands (a

---

[7]  See paragraph 5 of my original report.

[8]  See Jerre B. Swann, "Likelihood of Confusion Studies and the Straitened Scope of Squirt," The Trademark Reporter, Vol. 98, No. 3, May-June 2008, page 739.

[9]  See Flowers' Second Supplemental Complaint, November 17, 2008.

[10]  See Marketecture survey conducted on behalf of Flowers, page 56; Declaration of Janice Anderson, IBC Exhibit 7, paragraph 45.

variation on the "Squirt Design"), it tends to generate high noise levels which must be controlled and adjusted for in the analysis.[11] In fact, Mr. Swann has lamented the fact that studies like this tend to have noise levels upwards of 25%.[12] In the Array Survey, a number of respondents match up Nature's Own and Nature's Pride along with other brand(s) of bread in the display. Because the connection to these other brands clearly reflects survey noise or guessing, these particular responses cancel themselves out and certainly should not be considered as "confused."

16. It is also disingenuous for the plaintiff to criticize the Eveready Survey I designed which found no likelihood of confusion, while at the same time trying to adopt the results of the Array Survey by changing the analysis to suit their own purpose (i.e., credit clearly erroneous "guessing" as being indicative of confusion). Yet, they do this and never offer a survey of their own, despite being the plaintiff in this matter.

17. In summary, I respectfully disagree with the plaintiff's criticisms of the Eveready Survey and the Array Survey and stand by my original results and conclusions.

---

[11] See Itamar Simonson, The Effect of Survey Method on Likelihood of Confusion Estimates: Conceptual Analysis and Empirical Test, 83 Trademark Rep. 364, 371 (1993).

[12] Swann, supra, page 754.

Pursuant to 28 U.S.C., Section 1746, I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on January 6, 2010 in Chicago, Illinois.

_____
Philip Johnson

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| FLOWERS BAKERIES BRANDS, INC., | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 1:08-CV-2376-TWT |
| v. | ) ) | |
| INTERSTATE BAKERIES CORPORATION, | ) ) ) ) | |
| Defendant. | ) | |

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 14, 2010, I served by hand the foregoing "Declaration of Philip Johnson" to the following attorneys of record and electronically filed same with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to:

>Theodore H. Davis, Esq.
>Miles J. Alexander
>William H. Brewster
>Alicia G. Jones
>Charlene R. Marino
>KILPATRICK STOCKTON LLP
>Suite 2800
>1100 Peachtree Street
>Atlanta, GA 30309-4530
>TDavis@kilpatrickstockton.com

MAlexander@kilpatrickstockton.com
BBrewster@kilpatrickstockton.com
Aljones@kilpatrickstockton.com
CMarino@kilpatrickstockton.com

This 14th day of January, 2010.

/s/ Phillip S. McKinney
Phillip S. McKinney
Georgia Bar No. 495725

ROGERS & HARDIN LLP                  *Counsel for Defendant*
2700 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia 30303
Telephone: 404-522-4700
Facsimile: 404-525-2224
pmckinney@rh-law.com