IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FLOWERS BAKERIES BRANDS,
INC.,

    Plaintiff,

      v.

INTERSTATE BAKERIES
CORPORATION,

    Defendant.

CIVIL ACTION FILE
NO. 1:08-CV-2376-TWT

## ORDER

This is a trademark infringement action.  It is before the Court on the
Defendant's Motion in Limine to Exclude the Testimony of Donald A. Raulerson and
Evidence of Royalties [Doc. 252].  For the reasons set forth below, the Court
GRANTS IN PART and DENIES IN PART the Defendant's motion.

## I. Background

Flowers Bakeries Brands, Inc. ("Flowers") sells bread and other baked goods
under the brand name NATURE'S OWN.  Flowers has three federal trademark
registrations on NATURE'S OWN.  Interstate Bakeries Corporation ("Interstate") also
sells bread and baked goods.  In 2008, Interstate developed a new line of baked
products to be sold under the brand name NATURE'S PRIDE.  In July 2008, before

NATURE'S PRIDE was launched, Flowers filed this trademark infringement action against Interstate.   In its complaint, the Plaintiff asserts federal law claims for trademark infringement and unfair competition and state law claims for trademark dilution, unfair competition, and deceptive trade practices. [Doc. 21-1].

Notwithstanding the lawsuit, the Defendant proceeded with its launch of NATURE'S PRIDE.  By February 2009, the Defendant was selling and advertising NATURE'S PRIDE throughout most of the United States.  Meanwhile, this litigation continued.  Flowers plans to introduce the expert testimony of Donald Raulerson to establish damages.  The Defendant has filed a Motion in Limine to Exclude the Testimony of Donald A. Raulerson and Evidence of Royalties [Doc. 252].   The Defendant argues that Raulerson's testimony does not meet the requirements for admissible expert testimony under Rule 702 of the Federal Rules of Evidence.  See FED. R. EVID. 702.  Further, Interstate argues that the royalty rate proposed by the Plaintiff is not sufficiently reliable.

## II.  Legal Standard

Rule 702 provides that:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony

is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702; see also Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993).  The reason for these requirements is to ensure that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999).  The party offering testimony from an expert must show by a preponderance of evidence that the testimony is admissible.  Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999).

## III.  Discussion

The Plaintiff's expert, Donald Raulerson, plans to testify on three issues: (1) Interstate's profits from the sale of NATURE'S PRIDE; (2) Flowers' lost profits; and (3) the amount of a reasonable royalty.

### A.    Accounting of Interstate's Profits

The Defendant has moved to exclude Raulerson's testimony regarding an accounting of Interstate's profits.  Specifically, Flowers notes that Raulerson has not determined what portion of Interstate's profits may have resulted from legal conduct or other market factors. Thus, Flowers argues, Raulerson's testimony will not assist the trier of fact.  See Daubert, 509 U.S. at 591 (noting that expert testimony must "fit" issues in case to be helpful to the trier of fact).   "If it can be shown that the

infringement had no relation to profits made by the defendant, that some purchasers bought goods bearing the infringing mark because of the defendant's recommendation or his reputation or for any reason other than a response to the diffused appeal of the plaintiff's symbol, *the burden of showing this is upon the poacher*." <u>Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.</u>, 316 U.S. 203, 206 (1942) (emphasis added); <u>see also</u> <u>Wesco Mfg., Inc. v. Tropical Attractions of Palm Beach, Inc.</u>, 833 F.2d 1484, 1488 (11th Cir. 1987) ("It is enough that the plaintiff proves the infringer's sales.  The burden then shifts to the defendant, which must prove its expenses and other deductions from gross sales.").

Here, Raulerson will testify regarding Flowers' profits from the sale of NATURE'S PRIDE.  That testimony is relevant to meet Flowers' burden on an accounting of the Defendant's profits.  Interstate, not Flowers, must establish which sales, if any, are not attributable to infringement.  <u>See id.</u> Thus, Raulerson's testimony is not inadmissible for failure to address an issue on which Flowers bears the burden. For this reason, Raulerson's testimony relating to Interstate's profits is admissible.

B.     <u>Flowers' Lost Profits</u>

Interstate has also moved to exclude Raulerson's testimony regarding Flowers' lost profits.  Again, the Defendant argues that Raulerson's testimony is flawed because he fails to account for lost profits attributable to market factors such as price,

advertising, and quality.  Although Raulerson admits that he did not take these factors into account (Raulerson Dep. at 92-97), the Plaintiff contends that "damages may be awarded even when they are not susceptible to precise calculations." <u>Aronowitz v. Health-Chem Corp.</u>, 513 F.3d 1229, 1241 (11th Cir. 2008); <u>see also</u> <u>Bangor Punta Operations v. Universal Marine Co.</u>, 543 F.2d 1107, 1110 (5th Cir. 1976) ("[P]laintiff may recover upon a showing of the extent of the damages as a matter of just and reasonable inference, although the result may only be an approximation.").

In <u>Optimum Technologies, Inc. v. Henkel Consumer Adhesives, Inc.</u>, No. 04-CV-1082, 2006 U.S. Dist. LEXIS 42891 (N.D. Ga. June 14, 2006), the Plaintiff sought to introduce expert testimony on its actual damages in a trademark infringement case.  Although the court dismissed several claims upon which the damages calculations were based, the expert did not revisit his report or conclusions. The plaintiff's expert explained that "[he] didn't think in this case, because there [were] so many things going on at the same time, that [he] could reliably separate out how much of the damage was from [actionable or legal conduct]." <u>Id.</u> at *15.  The court found that "[t]he inability or failure to allocate damages between legal and actionable conduct highlights the fact that [the expert's] testimony would not assist the trier of fact." <u>Id.</u> at *16.  Similarly, in <u>First Savings Bank v. U.S. Bancorp</u>, 117 F. Supp. 2d 1078 (D. Kan. 2000), the plaintiff sought to use expert testimony to show

that it had lost business as a result of the defendant's trademark infringement.  The plaintiff's expert, however, assumed that the plaintiff's lost profits were the result of consumer confusion.  In doing so, the expert ignored various market factors including advertising, availability, and reputation.  The court held that the expert's testimony was inadmissible because it would not assist a trier of fact. The court reasoned that the expert "improperly attributed all losses to the defendants' allegedly illegal acts, despite the presence of other factors that could be significant to his analysis."  Id. at 1084; see also Concord Boat Corp. v. Brunswick Corp., 207 F.3d 1039, 1057 (8th Cir. 2000) (expert opinion in antitrust action inadmissible because "it did not incorporate all aspects of the economic reality of the stern drive engine market and because it did not separate lawful from unlawful conduct.").

Here, as in Optimum and First Savings, Raulerson failed to account for factors other than confusion that may have caused the Plaintiff's losses.  (Raulerson Dep. at 92-97.)  Flowers argues, however, that Raulerson's testimony is admissible because "damages may be awarded even when they are not susceptible to precise calculations."   Aronowitz, 513 F.3d at 1241.   Further, the Plaintiff contends, Raulerson could not accurately determine which damages were caused by infringement and which were not.  Indeed, it may be impossible to determine why an individual customer declined to buy Flowers' product after the Defendant introduced

NATURE'S PRIDE.   Nevertheless, while any calculation might have proven imprecise, Raulerson ensured his calculations would be particularly inaccurate by ignoring "factors that could be significant to his analysis." First Savings, 117 F. Supp. 2d at 1084.  It is not necessary that the Plaintiff allocate damages between legal and actionable conduct with exact certainty.  To be admissible, however, Raulerson cannot assume that *all* lost profits were attributable to the Defendant's infringement.  See Concord Boat, 207 F.3d at 1057 (excluding expert report because it "failed to account for market events that both sides agreed were not related to any anticompetitive conduct.").  For these reasons, Raulerson's testimony in its current form regarding the Plaintiff's lost profits is inadmissible.

C.    Reasonable Royalty

Finally, the Defendant argues that Flowers' evidence of a reasonable royalty, including Raulerson's testimony calculating a royalty, is inadmissible.  "The use of lost royalties to determine the actual damages incurred by a victim of trademark misuse is well established." Howard Johnson Co. v. Khimani, 892 F.2d 1512, 1519-1520 (11th Cir. 1990).  Further, even where the plaintiff would never have licensed the mark to the defendant, the court may apply a hypothetical royalty rate based on "the fiction that a license was to be granted at the time of beginning the infringement."

American Farm Bureau Fed'n v. Alabama Farmers Fed'n, 935 F. Supp. 1533, 1549 (M.D. Ala. 1996).

In Go Medical Indus. Pty, Ltd. v. Inmed Corp., No. 01-CV-313, 2005 U.S. Dist. LEXIS 19588 (N.D. Ga. Jan. 25, 2005), the plaintiff's expert applied a 3% royalty rate. The court found that the royalty rate was "unduly speculative and [was] contrary to the weight of evidence presented at trial." Id. at *22. Indeed, the court noted that the royalty rate "was just arbitrarily pulled out of the air." Id. By contrast, in Sands, Taylor & Wood v. Quaker Oats Co., 34 F.3d 1340 (7th Cir. 1994), the defendant objected to the application of a royalty rate higher than that used in a previous licensing agreement between the plaintiff and a third party. The court, however, found that the royalty rate was supported by market factors. Specifically, the court noted that the rate "was substantially lower than the rate used by [the plaintiff] for some other licensing ventures." Id. at 1345.

Here, Raulerson did not calculate the royalty rate himself. Rather, he used the 3.25% rate given to him by Flowers. (Raulerson Rep. ¶ 10.) Raulerson did, however, review several licensing agreements to determine whether 3.25% was reasonable. (Raulerson Dep. at 56-57.) As the Plaintiff notes, this royalty rate is used by Flowers for internal accounting purposes. Indeed, Flowers licenses the NATURE'S OWN mark to other Flowers entities at 3.25%. Thus, unlike Go Medical, the rate here was

not "pulled out of the air."  Go Medical, U.S. Dist. LEXIS 19588, at *22.  Rather, unlike the expert in Go Medical, Raulerson explained why he used 3.25%.  As in Sands, this rate was based on past licensing agreements between Flowers and its affiliates.  See Sands, Taylor & Wood, 34 F.3d at 1346 (noting that royalty rate informed by past licensing agreements); Adidas America, Inc. v. Payless Shoesource, Inc., No. 01-1655, 2008 WL 4279812, at *12 (D. Or. September 12, 2008) ("The royalty figure awarded by the jury is consistent with royalties between adidas or Payless with third parties and also with royalties between third parties.").  Although the Defendant points out other licensing agreements in which the Plaintiff charged a lesser royalty rate, Interstate will have an opportunity to challenge Flowers' hypothetical royalty rate at trial.  For these reasons, evidence of a reasonable royalty, including Raulerson's testimony, is admissible.

## IV.  Conclusion

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART the Defendant's Motion in Limine to Exclude the Testimony of Donald A. Raulerson and Evidence of Royalties [Doc. 252].

SO ORDERED, this 17 day of March, 2011.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge